UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEWIS SMITH,

          Plaintiff,

                                        Case No. 23-cv-1418-pp

   v.

ESPORTS ONE, INC.,
GINA KEITH GUNNIN
and MATTHEW RYAN GUNNIN,

          Defendants.

**ORDER DENYING DEFENDANTS' "MOTION FOR LIMITED CORPORATE OFFICER REPRESENTATION DUE TO FINANCIAL HARDSHIP" (DKT. NO. 20), DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS (DKT. NO. 13) AND ORDERING INDIVIDUAL DEFENDANTS TO FILE WRITTEN CLARIFICATION**

On October 25, 2023, the plaintiff filed a complaint against Esports One, Inc ("the corporate defendant") and defendants Gina Keith Gunnin and Matthew Ryan Gunnin ("the individual defendants"). Dkt. No. 1. There are three motions pending: (1) the defendants' "motion for limited corporate officer representation due to financial hardship," dkt. no. 20, (2) the individual defendants' motion to dismiss, dkt. no. 13, and (3) the plaintiff's motion to dismiss the individual defendants' counterclaim, dkt. no. 16. The court had planned to address these motions orally at the June 18, 2024 telephonic scheduling conference, but the individual defendants did not appear and telephone calls to them went to voicemail.

1

The court will deny the defendants' "motion for limited corporate officer representation due to financial hardship," dkt. no. 20, deny the individual defendants' motion to dismiss, dkt. no. 13, defer ruling on the plaintiff's motion to dismiss, dkt. no. 16 and order the individual defendants to file a written document clarifying whether they are attempting to state an affirmative defense or bring a counterclaim.

## I.    Background

### A.    Complaint (Dkt. No. 1) and Defendants' Motion for Extension of Time to File Answer (Dkt. No. 6)

On October 25, 2023, the plaintiff filed a complaint against the corporate and individual defendants. Dkt. No. 1. The complaint alleges that Matthew Ryan Gunnin owns Esports One, Inc. and is its CEO; Gina Keith Gunnin is the company's finance and human resource director. Id. at ¶¶8-9. It alleges that the defendants employed the plaintiff as a Product Manager from 2018 until August 2, 2022. Id. at ¶¶11-13. The complaint asserts that the defendants agreed to pay the plaintiff on a monthly basis, with a salary of $60,500 per year. Id. at ¶¶14-15. It alleges that the defendants "failed and refused to pay Plaintiff any wages for work performed by Plaintiff between April 29, 2022, and August 2, 2022," meaning the defendants "failed to pay Plaintiff $15,769.00 in agreed upon wages between April 29, 2022, and August 2, 2022." Id. at ¶¶16, 18. The complaint asserts that on September 7, 2022, the plaintiff filed a Labor Standards Complaint with the Wisconsin Department of Workforce Development, and on January 27, 2023, the Wisconsin Department of Workforce Development determined that the defendants owed the plaintiff

2

$15,769. Id. at ¶¶25-26. It alleges that, "[d]espite the Wisconsin Department of Workforce Development's determination, Defendants still failed and refused to pay Plaintiff the unpaid wages[,]" and the Wisconsin Department of Workforce Development closed the plaintiff's case (Case No. LS202201679) on February 22, 2023. Id. at ¶¶27-28.

The plaintiff complaint alleges three causes of action: (1) failure to pay minimum wages in violation of the Fair Labor Standards Act (FLSA), (2) failure to pay minimum wages in violation of Wisconsin law and (3) failure to pay agreed-upon wages in violation of Wisconsin law. Id. at ¶¶29-57.

On January 8, 2024, the court received the "Defendants' Motion for Extension of Time to File Answer." Dkt. No. 6. The motion was captioned "Lewis Smith *Plaintiff* v. Esports One, Inc *Defendants*," id. at 1; it was signed by the individual defendants, who are not represented by counsel, id. at 5. On January 31, 2024, the court issued an order granting that motion "as to the individual defendants only." Dkt. No. 11 at 1. The order observed that it was "not clear whether the individual defendants intended their motion to seek an extension for the corporate defendant or only requested an extension for themselves." Dkt. No. 11 at 3. To the extent the individual defendants intended to seek an extension of time for the corporate defendant, the court explained,

> A corporation must appear through an attorney. United States v. Hagerman, 545 F.3d 579, 581 (7th Cir. 2008) ("A corporation is not permitted to litigate in a federal court unless it is represented by a lawyer licensed to practice in that court."); see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel."). Neither individual defendant has stated

3

that he or she is "a lawyer licensed to practice," so neither of them may file motions on behalf of the corporate defendant. <u>See Hagerman</u>, 545 F.3d at 581. The court will deny without prejudice the individual defendants' motion for an extension of time to the extent that they are requesting an extension on behalf of the corporate defendant. If, once the corporate defendant obtains counsel, the corporate defendant needs an extension of time, it may ask for one (through its lawyer).

<u>Id.</u> at 4. As for the individual defendants, the court ordered them to "file their answers by the end of the day on **February 28, 2024**." <u>Id.</u> at 5 (emphasis in original).

B.    <u>Answer (Dkt. No. 12) and Defendants' Motion to Dismiss (Dkt. No. 13)</u>

On March 6, 2024, court received two documents. Dkt. No. 12. The first is titled "The Defendant's Answer to the Complaint." <u>Id.</u> at 2. Like the motion for an extension of time, this document is captioned "Lewis Smith *Plaintiff* -v- Esports One, Inc. *Defendant*." <u>Id.</u> at 1. Like the earlier motion, the document is signed by the individual defendants. <u>Id.</u> at 8. The answer responded to each paragraph of the plaintiff's complaint, then—under the heading "defendant's response"—stated:

> The defendants assert that they were transparent with the plaintiff regarding the company's financial situation and actively sought new funding sources. They communicated with the employees that no work or tasks would be assigned, and the plaintiff was the last employee to resign and the only former employee to file a claim.

> The plaintiff and their former colleagues were aware of Esports One's financial predicament, and the plaintiff chose to join a venture-backed startup, knowing the risks and limited prospects for success. Furthermore, the defendants state that they had exhausted their own financial resources trying to keep the company afloat, incurring significant debt throughout the process.

4

It has recently come to our attention that the plaintiff worked a second job without the company's knowledge as far back as December 2019. By accepting other employment long before the dates outlined in the claims, the plaintiff broke their employment agreement starting in December 2019, not only by accepting a second job without the company's knowledge but also by working for a direct competitor of the company within the Esports industry.

Therefore, the defendants request that all claims be dismissed, and any counterclaims be made at the court's discretion. Additionally, given this recently learned fact, the defendants are exploring filing a countersuit against the plaintiff for damages that may have been incurred against the company.

Id.

There were twenty-four pages of documents (titled "Reference Materials") attached to the answer: (1) what appears to be a page from the Wisconsin Department of Financial Institutions, with the words "Wisconsin License" typed at the top; (2) a series of messages identified in the table of contents as "Slack conversation with staff[,]" (3) a page with what appear to be three social media posts, identified in the table of contents as "Plaintiff announces 2nd job while employed at Esports One in December 2019[,]" (4) several pages of tax documents (including one that is illegible), identified in the table of contents as "2021/2022 Tax Filings[,]" (5) a September 10, 2018 letter to "Lewis" from defendant Matthew Gunnin, identified in the table of contents as "Employment Agreement[,]" and (6) a document titled "Esports One, Inc. Employee Proprietary Information and Invention Assignment Agreement," identified in the table of contents as "Employee PIIA Agreement." Dkt. No. 12-1.

The same day that the court received the answer and attachments—March 6, 2024—the court received a two-page document titled "Defendant's

Motion to Dismiss." Dkt. No. 13 at 2. Again, the document was captioned,
"Lewis Smith *Plaintiff* -v- Esports One, Inc *Defendant*." Id. at 1. Again, it was
signed by the individual defendants. Id. at 2. The motion stated, "[t]he
Defendants, Esports One, Inc., Matthew Ryan Gunnin, and Gina Keith Gunnin,
hereby move this Court to dismiss the Complaint filed by Plaintiff Lewis Smith,
with prejudice[.]" Id. at 2. It asserted that the court should dismiss the
complaint for three reasons:

> **1. Plaintiff's Claims are Barred by his Breach of Contract**
> Plaintiff's claims for unpaid wages are predicated on his employment
> with Esports One, Inc. However, Plaintiff materially breached his
> Employment Agreement and Proprietary Information and Invention
> Assignment Agreement (PIIA) by engaging in secondary employment
> with a competing company within the esports industry without the
> knowledge or consent of Esports One, Inc. This breach of contract
> occurred prior to the period for which Plaintiff claims unpaid wages
> and constitutes a complete defense to his claims.
>
> **2. Plaintiff Was Not Entitled to Wages During the Relevant
> Period**
> Plaintiff was informed on June 1, 2022, that due to financial
> difficulties, Esports One, Inc. was unable to assign him work or pay
> his wages while the company sought additional funding. Plaintiff
> was explicitly given permission to seek and accept other employment
> only during this period. Therefore, Plaintiff was not entitled to wages
> from Esports One, Inc. during the period for which he claims unpaid
> wages.
>
> **3. Plaintiff's Claims are Unfounded and Lack Merit**
> Plaintiff's allegations that Defendants willfully refused to pay wages
> are demonstrably false. Defendants made significant efforts to
> compensate employees, including Plaintiff, even incurring personal
> debt to fulfill payroll obligations. The company's financial situation
> was openly communicated to all employees, including Plaintiff.

Id.

On March 21, 2024, the plaintiff filed a brief in opposition to the
defendants' motion to dismiss. Dkt. No. 15. The plaintiff argued that because

6

neither of the individual defendants are attorneys, they cannot file a motion to dismiss on the corporate defendant's behalf. Id. at 2-3 (citing United States v. Hagerman, 545 F.3d 579, 581 (7th Cir. 2008)). The plaintiff contended that he had sufficiently pled a claim for unpaid wages and that the defendants' reasons for dismissal are improper at the pleading stage. Id. at 3-8. He asserted that he has satisfied the federal pleading standard by "alleging sufficient facts to put Defendants on notice of his claims for unpaid minimum and agreed upon wages and suggest that he is entitled to relief." Id. at 5. The plaintiff contended that the defendants' breach of contract affirmative defense is not a basis for dismissal at this stage of the litigation because the affirmative defense is based on facts not alleged in the complaint. Id. at 6-7. He asserted that the defendants' second and third arguments for dismissal—that "Plaintiff was not entitled to wages during the relevant period" and that "Plaintiff's Claims are Unfounded[/]Lack Merit"—are merit-based and thus not appropriate bases for dismissal under Federal Rule of Civil Procedure 12(b)(6). Id. at 7-8.

     C.    Plaintiff's Motion for Dismissal of Counterclaim (Dkt. No. 16)

     On March 21, 2024—just over two weeks later—the plaintiff filed a document titled "Motion for Dismissal of Defendants' Counterclaim," dkt. no. 16, along with a supporting memorandum of law, dkt. no. 18. The plaintiff explained that the answer included a "section titled 'Defendant's [sic] Response' which appears to attempt to plead a counterclaim for breach of contract." Dkt. No. 18 at 1 (quoting Dkt. No. 12). The plaintiff argued that to the extent that

the individual defendants are bringing a breach of contract counterclaim, the court lacks supplemental jurisdiction over that counterclaim. Id. at 2.

D.  "Motion for Limited Corporate Officer Representation Due to Financial Hardship" (Dkt. No. 20)

On April 8, 2024, the court received a document titled "Motion for Limited Corporate Officer Representation Due to Financial Hardship." Dkt. No. 20. Like the other documents the court has received, this document was captioned "Lewis Smith *Plaintiff* -v- Esports One, Inc *Defendant*." Id. at 1. And, like the other documents, it was signed by the individual defendants Id. at 3. The motion asked the court to "permit[] [defendant Matthew Gunnin] to represent the corporation in this lawsuit due to financial hardship." Id. at 1. The motion explains that because of financial constraints the corporate defendant is unable to afford legal representation. Id. at 2. The individual defendants acknowledge that they are not attorneys; they assert that they are seeking permission to represent the corporate defendant only in a "limited capacity." Id. The individual defendants describe this "limited capacity" as including "[p]articipating in conferences with the Court and opposing counsel[,]" "[s]ubmitting essential documents and responding to basic discovery requests" and "[p]resenting factual information relevant to the case." Id. The individual defendants assert that "[g]ranting this motion will not prejudice the Plaintiff" and promise that "[t]he officer [sic] will conduct themselves with decorum and adhere to all Court rules." Id.

As legal support for their motion, the individual defendants state:

The Sixth Amendment to the United States Constitution guarantees the right to counsel in all criminal prosecutions. While there is no constitutional right to counsel in civil cases, federal courts have recognized the importance of allowing a party to present its case, even in the absence of an attorney, under certain circumstances.

In this case, denying Defendant the opportunity to be heard would effectively deny it its right to defend itself. Given the corporation's current financial hardship and inactive status since 2022, retaining legal counsel is simply not feasible.

Id. at 3. The motion "requests that this Court enter an Order permitting Matthew Ryan Gunnin to represent the corporation in this lawsuit in a limited capacity due to financial hardship." Id.

On April 26, 2024, the plaintiff filed a brief opposing the motion. Dkt. No. 21. The plaintiff reiterates that "[a] corporation must appear through an attorney." Id. at 2 (citing Hagerman, 545 F.3d at 581). The plaintiff points out that the "[d]efendants do not cite any legal authority to support their motion" and that, "[d]espite searching, Plaintiff is not aware of any legal authority that would permit a corporation to appear by a non-attorney." Id. He asserts that a non-attorney representing a corporation "would violate Wis. Stat. §757.30[1] and subject Defendants to criminal penalties." Id. The plaintiff concludes, "[a]s

---

[1] Wis. Stat. §757.30(1) states that "[e]very person, who without first having obtained a license to practice law as an attorney of a court of record in this state, as provided by law, practices law within the meaning of sub. (2), . . . shall be fined not less than $50 nor more than $500 or imprisonment not more than one year in the county jail or both, and in addition may be punished for contempt." Wis. Stat. §757.30(2) says that "[e]very person who appears as agent, representative or attorney, for or on behalf of any other person, or firm, partnership, association or corporation in any action or proceeding before a court of any record, circuit or supplemental court commissioner, or judicial tribunal of the United States, or of any state . . . shall be deemed to be practicing law within the meaning of this section."

Defendant Esports One, Inc. is a corporation, and neither individual defendant has claimed to be an attorney, the Court must deny Defendants' motion." Id.

## II. Defendants' "Motion for Limited Corporate Officer Representation Due to Financial Hardship" (Dkt. No. 20)

As the court explained in its order granting the individual defendants' motion for an extension of time, dkt. no. 11 at 4, "It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." Rowland, 506 U.S. at 201-02. The Seventh Circuit Court of Appeals recently reaffirmed this longstanding rule: "The federal rule is clear: *only a member of the court's bar* (or a lawyer admitted pro hac vice) can represent another person *or entity in litigation.*" AsymaDesign, LLC v. CBL & Assocs. Mgmt., Inc., Case No. 23-2495, 2024 WL 2813827, at *1 (7th Cir. June 3, 2024) (emphasis added). "This rule applies even if the corporation is owned by only a few closely related individuals or by a single person who seeks to appear on behalf of the corporation." United States v. Certain Real Prop., 381 F. Supp. 3d 1007, 1008 (E.D. Wis. 2018). The Seventh Circuit has explained that "the right to conduct business in a form that confers privileges, such as the limited personal liability of the owners for tort or contract claims against the business, carries with it obligations one of which is to hire a lawyer if you want to sue *or defend* on behalf of the entity." Hagerman, 545 F.3d at 581-82 (emphasis added); see also In re IFC Credit Corp., 663 F.3d 315, 318 (7th Cir. 2011) ("Inability to litigate pro se can be thought of as part of the price for corporations' privileges.").

10

The individual defendants explain that "Esports Once, Inc. is currently experiencing financial hardship due to being unable to acquire outside investment," and that this hardship prevents the corporation from being able to afford legal representation. Dkt. No. 20 at 2. They also explain that the corporate entity has been "inactive" since 2022 and isn't engaged in any business operations.[2] Id. The court has no reason to doubt these representations, but the rule does not make exceptions for corporate entities suffering from financial hardships. The Seventh Circuit has held that "corporations must appear by counsel or not at all". Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1427 (7th Cir. 1985). The court recognizes that as a defendant, Esports One, Inc. did not choose to bring this lawsuit and that it does not have the choice not to appear. But the rule makes no exception for that fact, either. The individual defendants argue that allowing Matthew Gunnin to represent Esports One, Inc. will not prejudice the plaintiff. Whether this is true is irrelevant; the law does not allow Matthew Gunnin (or anyone else who is not a licensed attorney) to represent Esports One, Inc. The individual defendants describe Mr. Gunnin's knowledge of and experience with the company, and they assure the court that he will behave decorously and follow court rules. Again, the court has no reason to doubt these

_____

[2] The Wisconsin Department of Financial Institutions' website shows an October 14, 2022 "Revocation/Termination of Certificate/Registration" for the corporation, and shows that on January 12, 2024, its registered agent resigned. See https://apps.dfi.wi.gov/apps/corpSearch/Details.aspx?entityID=E057505&hash=185167822&searchFunctionID=c63a5fcd-2cdd-4fc0-8642-b393cd920273&type=Simple&q=Esports+One%2c+Inc. (last visited June 21, 2024).

11

representations, but the rule makes no exceptions for knowledgeable and experienced non-lawyers or for non-lawyers who agree to behave appropriately and follow court rules. Higher courts than this one—courts whose rulings this district court is bound by law to follow—have mandated that someone who "has chosen to do business in entity form . . . must take the burdens with the benefits." <u>Hagerman</u>, 545 F.3d at 582.

The individual defendants maintain that Mr. Gunnin seeks to represent the corporate entity in a "limited fashion." Dkt. No. 20 at 2. They propose that, on the corporate entity's behalf, he will "[p]articipat[e] in conferences with the Court and opposing counsel," that he will "submit[] essential documents and respond[] to basic discovery requests" and that he will "[p]resent[] factual information relevant to the case." <u>Id.</u> This list covers most of the duties that litigation counsel perform on behalf of clients; the representation the individual defendants propose that Mr. Gunnin will provide is not "limited." Even if it were, however, the rule prohibiting corporations from being represented by non-lawyers in federal court has no exceptions for "limited" representation.

Although the individual defendants have not asked the court to appoint *pro bono* counsel for the corporate defendant, the court advises them that it cannot recruit *pro bono* counsel for a corporation, even if that corporation is experiencing financial hardship. Under 28 U.S.C. §1915(e)(1), the court may "request an attorney to represent any person unable to afford counsel." The U.S. Supreme Court has interpreted the word "person" in 28 U.S.C. §1915 to refer "only to individuals" and not to corporations or other legal entities.

Rowland, 506 U.S. at 201 (1993) (interpreting 28 U.S.C. §1915(a)). Based on this interpretation, at least one district court in the Seventh Circuit has determined that only natural persons may qualify for the appointment of *pro bono* counsel under to 28 U.S.C. §1915(e)(1). See Indiana v. Startel Communication LLC, Case No. 21-cv-00150, 2022 WL 22702952, at *1 (S.D. Ind. Jan. 24, 2022) (citing Brand v. AIG Ins. Co., 2016 WL 11501700, at *2 (E.D.N.Y. July 19, 2016)). See also, Chalos & Co., P.C. v. SRAM & MRAM Resources Berhad, Case No. 23-cv-2523, 2023 WL 7325424 (E.D.N.Y. July 10, 2023) (Section 1915(e)(1) applies only to natural persons; court lacks authority to appoint *pro bono* counsel to a corporate defendant).

The court must deny the individual defendants' "motion for limited corporate officer representation due to financial hardship." Dkt. No. 20. Because neither individual defendant is a licensed attorney, neither of them are authorized to file an answer on the corporate defendant's behalf. This means that the corporate defendant has not answered the complaint. Because neither of the individual defendants are licensed attorneys, they also cannot file a motion to dismiss on the corporate defendant's behalf. This means that the corporate defendant has yet to appear in this lawsuit. If licensed counsel does not file a notice of appearance on behalf of defendant Esports One, Inc. by the end of the day on **June 26, 2024**, the plaintiff may move for default judgment against Esports One, Inc.

## III.    Individual Defendants' Motion to Dismiss (Dkt. No. 13)

Although the caption of Dkt. No. 13 lists only one defendant—Esports One, Inc.—both individual defendants signed it. The court assumes that the individual defendants intended to seek dismissal on their own behalf, and so turns to their arguments.

Rule 12(b) of the Federal Rules of Civil Procedure is titled "How to Present Defenses." It says that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." But it goes on to state that there are seven defenses that a party may assert by motion (rather than in the responsive pleading). Those seven exceptions are lack of subject-matter jurisdiction (Rule 12(b)(1)); lack of personal jurisdiction (Rule 12(b)(2)); improper venue (Rule 12(b)(3)); insufficient process (Rule 12(b)(4)); insufficient service of process (Rule 12(b)(5)); failure to state a claim upon which relief may be granted (Rule 12(b)(6)); and failure to join a party under Rule 19 (Rule 12(b)(7)). In this court's experience, the defense most commonly asserted through a motion to dismiss is Rule 12(b)(6)'s defense that the complaint fails to state a claim upon which relief may be granted.

Although the individual defendants' motion to dismiss does not cite Rule 12(b) or any of its subsection, their arguments appear to be an attempt to claim that the complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion v. Girl Scouts of

14

Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court takes "all the factual allegations in the complaint as true," Iqbal, 556 U.S. at 678, and draws all reasonable inferences in the plaintiff's favor, Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016). In evaluating plausibility, the court looks to the complaint as well as "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013).

The complaint raises three claims: (1) failure to pay minimum wages in violation of the FLSA, (2) failure to pay minimum wages in violation of Wisconsin law and (3) failure to pay agreed upon wages in violation of Wisconsin law. Dkt. No. 1 at ¶¶29-57. It alleges that the plaintiff was employed by the defendants, that the defendants agreed to pay him an annual salary of $60,500 (paid in monthly installments), that he performed work for the defendants from April 29, 2022 through August 2, 2022 and that the defendants did not pay him for that work. Id. 11, 14-18. These factual allegations state a claim for relief that is plausible on the face of the complaint,

allow the court to draw a reasonable inference that the defendants are liable for the conduct alleged and that give the defendants notice of what it is the plaintiff alleges that they did. See Martinez v. Regency Janitorial Servs. Inc., Case No. 11-C-259, 2011 WL 4374458, at *4 (E.D. Wis. Sept. 19, 2011) (noting that "[a] FLSA claim is a fairly straightforward claim" and that "[u]nlike a case involving financial derivatives or antitrust violations, it does not take much to inform the defendant of the nature of the plaintiff's claim"); Sliwinski v. City of Milwaukee, 321 Wis. 2d 774, 786-87 (Wis. Ct. App. 2009) (holding that there are "two facets to the Wis. Stat. §109.01(3) wage claim: (1) the employee must have at some time performed personal services that entitle him or her to the wages; and (2) the employee's entitlement to the wages must be clear and already determined by either an agreement or employer's policy").

The individual defendants' arguments that the "Plaintiff was not entitled to wages during the relevant period" and that the "Plaintiff's Claims are Unfounded[/]Lack Merit" do not support dismissal at the pleading stage. Dkt. No. 13 at 2. These arguments challenge the *merits* of the allegations in the complaint. As explained above, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case." Mattek v. Deutsche Bank Nat. Tr. Co., 766 F. Supp. 2d 899, 900 (E.D. Wis. 2011) (citing Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990)). When reviewing a motion to dismiss, the court must accept the well-pleaded factual allegations in the complaint as true, Iqbal, 556 U.S. at 678, and draw all reasonable inferences in the plaintiff's favor,

16

Roberts, 817 F.3d at 564. The individual defendants will be able to challenge the merits of the plaintiff's claims at later stages in the ligation, such as the summary judgment stage or, if the claims survive summary judgment, at trial.

In their answer, the individual defendants claim that the plaintiff breached his employment contract; that claim does not warrant dismissal at the pleading stage. "Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim." Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012); see also United States v. N. Tr. Co., 372 F.3d 886, 888 (7th Cir. 2004) ("[C]omplaints need not anticipate and attempt to plead around defenses."). Because "defenses typically turn on facts not before the court at that stage in the proceedings." Brownmark Films, LLC, 682 F.3d at 690, dismissal based on an affirmative defense is appropriate only when "'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense[,]'" Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009) (quoting United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005)). The individual defendants' breach of contract defense turns on facts not currently before the court. The complaint does not mention an employment contract and the plaintiff did not attach a contract to his complaint.

The court will deny the individual defendants' motion to dismiss. Dkt. No. 13.

**IV.    Plaintiff's Motion to Dismiss Counterclaim (Dkt. No. 16)**

The court has explained that in a paragraph at the end of their answer, the individual defendants assert that the plaintiff worked a second job without their knowledge, and that in so doing he "broke [his] employment agreement starting in December 2019." Dkt. No. 12 at 8. In the next, final paragraph of their answer, the individual defendants stated that they "are exploring filing a countersuit against the plaintiff for damages that may have been incurred against the company." Id.

The plaintiff's March 21, 2024 motion is titled "Motion for Dismissal of Defendants' Counterclaim." Dkt. No. 16. The motion cites Fed. R. Civ. P. 12(b)(1) (the subdivision of Rule 12(b) that allows a party to raise the defense of lack of subject-matter jurisdiction by motion). Id. The plaintiff's accompanying brief says that the individual defendants' answer "appears to attempt to plead a counterclaim for breach of contract." Dkt. No. 18 at 2. The brief goes on to argue that a federal court does not have supplemental jurisdiction over a state-law counterclaim.

The plaintiff appears to believe that the individual defendants, in asserting in their answer that they believe the plaintiff breached his employment contract, were trying to assert a "counterclaim," and not an "affirmative defense." An "affirmative defense" limits or excuses a defendant's liability to a plaintiff's claims, Bell v. Taylor, 827 F.3d 699, 704 (7th Cir. 2016), while a "counterclaim" is a *new claim* a defendant brings against a plaintiff, Philadelphia Indem. Ins. Co. v. Chi. Title Ins. Co., 771 F.3d 391, 401-02 (7th

18

Cir. 2014). *Compare Defense*, Black's Law Dictionary (11th ed. 2019) (defining "affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true), *with Counterclaim*, Black's Law Dictionary (11th ed. 2019) (defining "counterclaim" as "[a] claim for relief asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim").

The court has explained that Rule 12(b) requires a party to assert most defenses in a responsive pleading. The individual defendants asserted their breach-of-contract argument in their answer—their responsive pleading. It appears to the court—as best it can tell—that in alleging the plaintiff breached his employment contract, the individual defendants were trying to defend against the plaintiff's claims by arguing that even if everything the plaintiff alleged in the complaint were true, they are not liable because the plaintiff breached his employment contract.

That said, in the answer's final paragraph—the part that a lawyer likely would have titled the "prayer for relief"—the individual defendants asked that "any counterclaims be made at the court's discretion." This is a confusing request. *Courts* do not bring counterclaims; *parties* do. If the individual defendants wanted to bring a counterclaim—if they wanted to raise, in this lawsuit brought by the plaintiff, a new claim against the plaintiff—*they* need to file a counterclaim. The court will not do so for them. The individual defendants also stated in that last paragraph of their answer that, because

19

they'd recently learned that the plaintiff had worked a second job, "the defendants are exploring filing a countersuit against the plaintiff for damages that may have been incurred against the company." Dkt. No. 12 at 8. This statement, too, is confusing. The individual defendants did not say that they *were* bringing a counterclaim, or a "countersuit," against the plaintiff. They said they were "exploring filing" such a claim or suit.

Given this conflicting and confusing language, it is not clear whether the individual defendants raised the breach-of-contract issue as an *affirmative defense* to the plaintiff's claims or whether they were trying to bring a *counterclaim* against the plaintiff. If the individual defendants meant only to raise an *affirmative defense* of breach of contract, the plaintiff's motion to dismiss is unnecessary and should be denied. If, however, the individual defendants were attempting to raise a *counterclaim* against the plaintiff, the court must analyze and decide the plaintiff's legal argument that the court has no jurisdiction over that counterclaim.[3]

Before ruling on a motion that may well be unnecessary, the court will require the individual defendants to file a written statement advising the court whether they intended their breach-of-contract allegation to be an affirmative defense to the plaintiff's claims or a counterclaim against the plaintiff. If the

---

[3] Under Civil Local Rule 7(b) (E.D. Wis.), the individual defendants had twenty-one (21) days from the date the plaintiff filed the motion to dismiss to file their opposition materials. The plaintiff filed the motion on April 8, 2024; the individual defendants' opposition materials were due by April 29, 2024. The individual defendants have not responded to the motion as of the date of this order.

court does not receive this written statement by the deadline the court sets below, the court may treat the breach-of-contract allegations as a counterclaim and rule on the plaintiff's motion to dismiss with no input from the individual defendants.

## V.     Miscellaneous

The court has acknowledged that the individual plaintiffs are not lawyers. It also has acknowledged that they are *defendants*—they did not bring this lawsuit and did not choose to be in federal court. It is one of the unfortunate realities of litigation, however, that even though defendants don't choose to be sued, they nonetheless are bound by the same laws and rules as the plaintiff who chose to bring the lawsuit against them.

Although a lawsuit is an adversarial process where each party zealously advocates for their own interests, parties often are required to work civilly and in good faith with each other to avoid unnecessary litigation. See PopSockets, LLC v. Hueffner, Case No. 17-cv-827, 2018 WL 4568823, at *18 (E.D. Wis. Sept. 24, 2018) ("This court requires parties to file [a discovery] plan prior to the Rule 16 conference; parties may not be able to agree on their discovery plan, but the court expects parties to confer in good faith to try to reach agreement."); Davis v. Harris, Case No. 03-CV-3007, 2005 WL 8164715, at *1 (C.D. Ill. June 7, 2005) (noting that "discovery in Federal civil litigation is generally designed to be self-executing" and that "[c]ooperation between the parties is key"). Parties commonly use email to communicate with an opposing party and to confer about joint filings (such as a Rule 26(f) report). The

plaintiff's counsel provided the court with an email he received from the individual defendants, stating that "anything [the plaintiff] send[s] to [them] should be sent to [them] in the mail." Dkt. No. 22-1 at 2. The individual defendants made this statement despite the fact that they have email addresses. Perhaps the individual defendants are under the mistaken impression that all communications between the parties must be "served" by United States mail. That is incorrect. Parties may communicate by email or telephone, and those forms of communication often are necessary to allow them to discuss issues in a timely fashion to meet court-imposed, statutory or rule-based deadlines. The court strongly encourages the individual defendants and the plaintiff's counsel to make good-faith efforts to work with each other and to communicate with each other efficiently and civilly.

In that same email exchange, the plaintiff's counsel asked the individual defendants to "provide [him] with any proposed revisions [to his proposed Rule 26(f) report] within 7 days" of May 22, 2024, so that the parties could "discuss those revisions further." Dkt. No. 22-1 at 2. The individual defendants responded, "No deadline goes into effect until we have been given significant time to review once received." Id. The individual defendants are mistaken. Deadlines in federal litigation are set by the court, or by statute, or by the federal or local rules. For example, the court ordered the parties to file either a joint Rule 26(f) plan or separate plans "[o]n or before June 4, 2024[.]" Dkt. No. 14. The email exchange shows that counsel for the plaintiff was attempting to work with the individual defendants to file a joint report by the deadline that

22

the *court* had imposed. Dkt. No. 22-1. The individual defendants were incorrect in stating that there was "[n]o deadline [in] effect"—there was a *court-ordered* deadline in effect. Courts have the authority to impose sanctions on parties who fail to comply with its deadlines. See Fed. R. Civ. Pro. 37(b)(2).

The plaintiff's counsel reported in his proposed Rule 26(f) plan that individual defendant Matthew Gunnin had stated during the parties' Rule 26(f) conference that he "intended to stop paying for the email service." Dkt. No. 22 at 5. The plaintiff's counsel expressed concern that this could "result in a spoliation of potential evidence." Id. "Spoliation" is the intentional or negligent withholding, destruction or alteration of relevant evidence. Each party has a duty to preserve evidence in their possession that is relevant to the legal issues in this lawsuit. See Trask–Morton v. Motel 6 Operating L.P., 534 F.3d 672, 681 (7th Cir. 2008); Smith v. United States, 293 F.3d 984, 988 (7th Cir. 2002) ("Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case."). When a corporation is faced with pending litigation, the duty to preserve evidence extends to its corporate officers. Danis v. USN Communications, Inc., Case No. 98 C 7482, 2000 WL 1694325, at *38 (N.D. Ill. Oct. 20, 2000) (holding that "corporate officers and managers can be held personally responsible for a corporation's failure to preserve relevant evidence"); see also Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987) ("The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in

23

possession of discoverable materials."). If a party proves spoliation of evidence by an opposing party, the opposing party may be subject to sanctions.

On March 8, 2024, the court issued its "Order Setting Rule 16 Scheduling Conference and Directing Parties to File Rule 26(f) Report." Dkt. No. 14. As noted earlier, the court ordered that on or before June 4, 2024, the parties must file a joint, written "discovery" plan (also called a Rule 26(f) plan after Fed. R. Civ. P. 26(f), which requires parties to file such plans). Id. at 1. The court also ordered that the parties were required to appear at a telephonic scheduling conference on June 18, 2024 at 10:00 a.m. Central Time. Id. The scheduling conference took place, as ordered, on June 18, 2024; the plaintiff's counsel attended by telephone. Although the plaintiff did timely file a proposed, unilateral Rule 26(f) plan, the court did not discuss that plan, or set a litigation schedule, at the scheduling conference, because the individual defendants *did not* appear at the hearing. The court's staff attempted to contact both individual defendants at the telephone numbers they had provided; both calls went to voicemail.

The court *ordered* all the parties to appear at the telephonic status conference on June 18, 2024. The individual defendants violated that court order. Because the court understands that the individual defendants are not lawyers and may not understand the possible consequences of failure to follow court orders, the court will not require them to show cause why they should not be sanctioned for that failure. But if the individual defendants fail to comply with court-imposed deadlines, or fail to appear in the future when

24

ordered to do so, the court will require them to show cause why the court should not impose sanctions against them.

Once the individual defendants have advised the court, in writing, whether they intend their breach-of-contract claim to be an affirmative defense or a counterclaim, the court will set a deadline for the parties to prepare a new, updated Rule 26(f) plan; the dates in the plaintiff's proposed plan are now unworkable.

## VI. Conclusion

The court **DENIES** the individual defendants' Motion for Limited Corporate Officer Representation Due to Financial Hardship." Dkt. No. 20.

The court **DENIES** the individual defendants' motion to dismiss. Dkt. No. 13.

The court **ORDERS** that if licensed counsel does not file a notice of appearance on behalf of defendant Esports One, Inc. by the end of the day on **July 26, 2024**, the plaintiff may move for default judgment against Esports One, Inc.

The court **ORDERS** that by the end of the day on **July 19, 2024**, the individual defendants must file a document advising the court whether they intend their breach-of-contract allegations to be an affirmative defense or a counterclaim. The individual defendants must file this document in time for the court to *receive* it by the end of the day on July 19, 2024. If the court does not receive that written document by the end of the day on July 19, 2024, the

court will treat the allegations as a counterclaim and will analyze and rule on the plaintiff's motion to dismiss it for lack of subject-matter jurisdiction.

Dated in Milwaukee, Wisconsin this 21st day of June, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

26